[Cite as *Pratt v. Stewart*, 2011-Ohio-2481.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARK A. PRATT, ET AL. | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellees | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. CT2010-0047 |
| ARTHUR STEWART | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Muskingum County Court<br>of Common Pleas, Case No. CH2002-0395 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 19, 2011 |
| APPEARANCES: | |

| For Plaintiff-Appellees | For Defendant-Appellant |
|---|---|
| STEVEN D. ROWE<br>ERICA ANN PROBST<br>Kemp, Schaeffer & Rowe Co., LPA<br>88 West Mound Street<br>Columbus, Ohio 43215 | JETTA MENCER<br>One South Park Place<br>Newark, OH 43055 |

*Hoffman, J.*

{¶1} Defendant-appellant Arthur Stewart appeals the August 27, 2010 Judgment Entry of the Muskingum County Court of Common Pleas granting judgment in favor of Plaintiff-appellees Mark A. Pratt and Thomas A. Smith.

STATEMENT OF THE FACTS AND CASE

{¶2} In 2000, Appellant entered into an oral agreement with Benjamin Mast to purchase a large parcel of land in Holmes County. The parcel contained approximately 20 acres. Appellant requested his attorney prepare a purchase agreement and note for the purchase of the property indicating a purchase price of $950,000. The purchase agreement indicated a down payment of $350,000 for the purchase of the parcel.

{¶3} Howard Arnold, owner of Arno Enterprises, Inc., agreed to provide the down payment for the purchase. Arnold sought to purchase a 3.1 acre parcel of land in Holmes County for the purpose of constructing a Howard Johnson Hotel. In consideration for the $350,000 down payment made by Arnold, Appellant agreed to transfer a 3.1 acre parcel from the larger 20 acre parcel to Arnold.

{¶4} In conjunction with the agreement to transfer the 3.1 acres to Arnold in exchange for the $350,000 down payment paid by Arnold, Appellant prepared a purchase agreement, which was executed on October 30, 2000. The purchase agreement provided for the purchase of a 3.1 acre parcel from Dutch Country Acres, LLC to Arno Enterprises. According to the terms of the purchase agreement, Arno Enterprises purchased the 3.1 acres from Dutch County Acres, LLC for $750,000. The agreement stated a $350,000 check was issued by Arnold to Stewart on October 30,

2000 as a down payment for the purchase of the real estate. The balance of $400,000 was to be paid by Arno Enterprises at closing.

{¶5} Appellant acknowledged receipt of the $350,000 check by initialing Page 1 of the agreement. However, Arnold had informed Appellant prior to the execution of the purchase agreement he did not have the funds to make good the check for $350,000.00. Despite having knowledge Arnold lacked the necessary funds to purchase the property; Appellant executed the agreement because an executed purchase agreement was necessary for the procurement of funds for the purchase of the larger real estate parcel and the construction loan.

{¶6} Subsequently, Arnold informed Appellant he did not have the financing required for the purchase, at which time, Appellant suggested Arnold meet with him to execute a $200,000 note and to deliver a $150,000 check. On November 1, 2000, Arnold executed a promissory note for the benefit of Appellant in the amount of $200,000. On November 1, 2000, Arnold told Appellant he did not have the money to cover a $150,000 check. However, on the same date, Appellant prepared and executed a receipt acknowledging the receipt of $350,000 for the down payment toward the purchase of the 3.1 acre parcel of land.

{¶7} Appellant requested his attorney prepare a warranty deed transferring the 3.1 acre parcel directly from Masts to Arno Enterprises, Inc. Appellant executed the warranty deed and delivered the executed copy to Arnold to use to secure a lender to finance the purchase and development of the parcel.

{¶8} Appellant never executed the first purchase agreement with the Masts. By the end of 2001, the Masts continued to own the 20 acre parcel of land.

{¶9}  In 2001, Arnold retained the services of John Visintine in an attempt to secure secondary financing in the amount of $600,000 to complete the real estate purchase.  Visintine relied upon the purchase agreement between Arno Enterprises, Inc. and Dutch Country Homes, the Note executed by Arnold, the receipt executed by Appellant acknowledging acceptance of $350,000, the warranty deed and a loan commitment from F&T Leasing of Longmont Colorado for 2.325 million dollars for construction of the Howard Johnson Hotel.

{¶10} Visintine contacted several lenders to inquire about the $600,000 financing, including appellees Mark Pratt and Thomas Smith.

{¶11}  In October, 2001, F&T Leasing issued a second loan commitment for the $600,000 real estate purchase.  Visintine learned some costs needed to be paid before the closing for both loans could occur, including a $23,750 loan application fee, costs for architectural drawings and a bond deposit.  Visintine was made aware the additional money needs were approximately $25,000.  Arnold did not have the funds to cover the costs, and Visintine contacted Mark Pratt and Thomas Smith.  Visintine told Pratt his money would be repaid within thirty to sixty days with a $5,000 profit.

{¶12}  Pratt requested he be provided with any documents regarding the project. Visintine delivered documents to Pratt including the purchase agreement between Arno Enterprises and Dutch Country, the receipt executed by Appellant, the note executed by Arnold, the warranty deed and a loan commitment from F&T Leasing for 2.325 million dollars.  Appellees claim to have relied upon the above, and an understanding of the purported $150,000 cash deposit made by Arnold to Appellant.  Pratt alleges Appellant told him he would release funds from the deposit if the loan did not close.

{¶13} The loans did not close, and Appellees sought to recover the $25,000 from the $150,000 deposit Arnold held. Appellant never repaid appellees their monies.

{¶14} Appellees filed the within complaint against Appellant and Arnold predicated on a cognovit note and default agreement executed by Arnold and the alleged promise made by Appellant to repay the monies. Appellees amended the complaint as to Appellant to allege additional causes of action for breach of contract, unjust enrichment, promissory estoppel, fraud and conversion.

{¶15} Following a bench trial, via Judgment Entry of August 27, 2010, the trial court entered judgment in favor of Appellees against Appellant in the amount of $30,000 on the basis of fraud and promissory estoppel.

{¶16} On appeal, Appellant now assigns as error:

{¶17} "I. THE TRIAL COURT'S FINDING THAT APPELLANT MADE A REPRESENTATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶18} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING FRAUD BASED ON ALLEGED REPRESENTATIONS THAT WERE NOT AVERRED IN THE COMPLAINT.

{¶19} "III. THE TRIAL COURT'S FINDING THAT APPELLANT MADE A REPRESENTATION WITH THE INTENT TO MISLEAD ANOTER [SIC] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶20} "IV. THE TRIAL COURT'S FINDING THAT APPELLEE JUSTIFIABLY RELIED ON A REPRESENTATION MADE BY APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶21}** "V. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING PROMISSORY ESTOPPEL."

I, II, III, IV and V

**{¶22}** Appellant's assigned errors raise common and interrelated issues; therefore, we will address the arguments together.

**{¶23}** By virtue of the two-issue rule, a decision which is supported by one or more alternate grounds properly submitted is invulnerable to attack on one issue only. *Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 185, quoting *H.E. Culbertson Co. v. Warden* (1931), 123 Ohio St. 297, 303. Accordingly, as the trial court granted judgment in favor of Appellees on both the claims of promissory estoppel and fraud, if the evidence supports the trial court's judgment as to promissory estoppel, Appellant's argument the trial court incorrectly found fraud would not result in reversal.

**{¶24}** The elements necessary to establish a claim for promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. *Schepflin v. Sprint-United Telephone of Ohio* (April 29, 1997), Richland App. No. 96-CA-62-2, 1997 WL 1102026 at 3-4, citing *Stull v. Combustion Engineering, Inc.* (1991), 72 Ohio App.3d 553, 557, 595 N.E.2d 504.

**{¶25}** Appellant argues the trial court failed to find a clear, unambiguous promise; rather, based its award on a representation.

**{¶26}** Promissory estoppel has been defined as a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promissee

or a third person, and which does induce such action or forbearance wherein injustice can be avoided only by enforcement of the promise. *Ed Schory & Sons, Inc. v. Society National Bank* (1996), 75 Ohio St.2d 432.

**{¶27}** At the trial in this matter, Mark Pratt testified:

**{¶28}** "Q. Did he give you any details at all about the financing?

**{¶29}** "A. Yeah. He gave me a package which included a loan application, personal financial statement, tax return, purchase contract, deed.

**{¶30}** "Q. A loan application - - I'm sorry. You said those real quick.

**{¶31}** "A. A loan application, I believe a personal financial statement, a credit report, the package included a letter with Enterprise Development Corporation, who was presented as a federally funded nonprofit organization that was going to loan some money to Mr. Arnold - - but that was not going to be enough to cover what he needed - - a purchase contract with Mr. Stewart, a survey of the property showing Benwill as owner, a warranty deed, tax return for Mr. Arnold. There were various documents to legitimize the transaction is how I would describe the package.

**{¶32}** "Q. You have listed eight different documents?

**{¶33}** "A. Basically I didn't see all the documents that were passed around today, but that's where the documents came from.

**{¶34}** "Q. The loan application, that was something that Mr. Arnold completed?

**{¶35}** "A. Yes.

**{¶36}** "* * *

**{¶37}** "Q. So you reviewed the documents and called Mr. Anfang why?

**{¶38}** "A. I wanted to find out the validity of the deal.  Did he have financing set? Did he have a conditional loan approval letter or contracts? Was his understanding that there had been money changing hands and a deposit held per the contract?

**{¶39}** "I wanted to know if this is funded, did he have any problems paying us? Did he feel that he had the approvals from Mr. Arnold, Mr. Stewart, FT Leasing, from anybody, he needed so that they would be comfortable releasing our money back to us.

**{¶40}** "Q. So you wanted to be paid out of the closing?

**{¶41}** "A. Absolutely.

**{¶42}** "Q. And you weren't comfortable doing this if you weren't going to be paid out of the closing?

**{¶43}** "A. Absolutely.

**{¶44}** "Q. So did Mr. Anfang give you any kind of answers on the phone that day?

**{¶45}** "A. Yes. He followed up with a letter.  Said he had contact with the lender. It was his understanding minor things needed to be done as far as getting the drawings or whatever off.  He felt this was soon to close, and as with our original contract, our funds would be back to us within 15 days was how close this was to coming together.

**{¶46}** "I assumed with Mr. Anfang's expertise that he was aware that permits were pulled; that, you know, if he's involved and we have a developer involved and a federally funded group, everybody has put their blessings on it, that some of those details, I wouldn't need to verify myself.  But what I needed to verify was if it didn't fund, that the money was there to pay me back anyway.

**{¶47}** "Q. Was the letter that you received from Mr. Anfang consistent with the conversation that you had with him on the phone?

**{¶48}** "A. Yes. He was very confident that this was going to close.

**{¶49}** "* * *

**{¶50}** "Q. Tell me about your conversation with Mr. Stewart.

**{¶51}** "A. I wanted to know, does he, in fact, have funds on deposit from Mr. Arnold and that if this deal does not close that Mr. Arnold is entitled to some of those funds back and are those funds sufficient to pay me, and does he have a problem repaying me out of Mr. Arnold's money that he's holding as well as are there any glitches going forward in closing.

**{¶52}** "So I didn't really care if it closes or not. My money is safe because somebody is holding my cash, but I'm hoping it closes for these people.

**{¶53}** "Q. So you call Mr. Stewart and those are the questions that you had at that time, right?

**{¶54}** "A. Yes.

**{¶55}** "Q. And what specifically did he tell you?

**{¶56}** "A. Everything was going fine; yes, he had no problem paying me back. Did he want - - I asked him do I need a letter from Mr. Arnold or does he have Mr. Arnold's permission? And I got a letter from Mr. Arnold just to make sure. Wanted to make sure - - I wanted to find out what funds were needed, and he assured me funds were needed to put this together.

**{¶57}** "Q. He told you everything was going fine and there was no problem paying you back?

**{¶58}** "A. Correct.

**{¶59}** "Q. And you asked him if you needed a letter form Mr. Arnold?

**{¶60}** "A. Yes.

**{¶61}** "Q. And what did he say?

**{¶62}** "A. He didn't think it would be necessary I believe was the comment, but I got one anyway.  I also got a letter through Mr. Visintine stating that the funds were being held and that I would be paid back.

**{¶63}** " - - -

**{¶64}** "And, thereupon, Deposition Exhibit No. 6 was marked for the purposes of identification.

**{¶65}** "- - -

**{¶66}** "By Ms. Mencer:

**{¶67}** "Q. I'm going to hand you what has been Exhibit 6?

**{¶68}** "A. It has Accu-Spect at the top.

**{¶69}** "Q. You got a letter from Mr. Arnold?

**{¶70}** "A. Yes."

**{¶71}** Tr. at 12-22.

**{¶72}** Accordingly, the testimony establishes Appellant represented he held $150,000 on deposit from Arnold, and he would repay Appellees their monies from the deposit should the loan fail to close.  Appellees reasonably relied upon Appellant's representations in loaning their monies to their detriment.  Accordingly, the judgment of the trial court is supported by competent, credible evidence.

{¶73} The August 27, 2010 Judgment Entry of the Muskingum County Court of Common Pleas is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Wise, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin_____
HON. W. SCOTT GWIN


s/ John W. Wise_____
HON. JOHN W. WISE

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

MARK A. PRATT, ET AL.                      :
                                           :
    Plaintiff-Appellees                     :
                                           :
-vs-                                       :          JUDGMENT ENTRY
                                           :
ARTHUR STEWART                             :
                                           :
    Defendant-Appellant                     :          Case No. CT2010-0047


For the reasons stated in our accompanying Opinion, the August 27, 2010 Judgment Entry of the Muskingum County Court of Common Pleas is affirmed. Costs to Appellant.


                                s/ William B. Hoffman_____
                                HON. WILLIAM B. HOFFMAN


                                s/ W. Scott Gwin _____
                                HON. W. SCOTT GWIN


                                s/ John W. Wise _____
                                HON. JOHN W. WISE